Argued January 8; modified March 10, 1942

# BROWN ET AL. *v.* MARION FINANCE CO.

(123 P. (2d) 187)

Before KELLY, Chief Justice, and BELT, BAILEY, LUSK, RAND, ROSSMAN and BRAND, Associate Justices.

*Asa L. Lewelling*, of Salem (Custer E. Ross, of Salem, on the brief), for appellant.

*Norman K. Winslow*, of Salem (W. C. Winslow, of Salem, on the brief), for respondent.

BAILEY, J. The plaintiffs, H. C. Brown and G. L. Kier, partners doing business as Brown & Kier, instituted this action to recover from the defendant, Marion Finance Company, a corporation, the reasonable value of labor performed and services rendered by the plaintiffs for the defendant in "clearing, grading and ditching certain streets shown by the recorded plat of Eagle Point and Eaglet addition at DeLake, Lincoln county, Oregon," alleged to be $4,200, of which amount $2,581.43 had been paid; and, on a second cause of action, to recover from the defendant the further sum of $250 as the alleged reasonable value of labor performed and services rendered in "clearing, grading and leveling a small area of ground adjacent to the club house at DeLake," no part of which had been paid.

To the first cause of action the defendant filed an affirmative answer, alleging that on March 22, 1939, the plaintiffs and the defendant entered into a written contract wherein it was stipulated that the "plaintiffs would perform, along with certain other work, the services enumerated in plaintiffs' complaint"; and that in consideration of the performance of such services the defendant promised to and did indorse and deliver to the plaintiffs "certain promissory notes payable to the defendant of which there was a total unpaid balance" of $4,200.64. A copy of the contract is attached to and made a part of the defendant's answer.

As a second affirmative defense and by way of counterclaim to the plaintiffs' first cause of action the defendant again sets forth the execution of the contract above mentioned and further alleges that the

plaintiffs have failed and neglected to carry out the terms of the contract by them to be performed; and that by such failure the defendant has been damaged in the sum of $2,000, for which amount it asks judgment against the plaintiffs.

The plaintiffs set forth three affirmative replies to the defendant's first affirmative answer, that of payment. One of these affirmative replies is that the notes delivered by the defendant to the plaintiffs were not taken in payment for the work to be performed by the plaintiffs. Another affirmative reply to the same defense is that the notes which were delivered by the defendant to the plaintiffs were given to the defendant by the makers thereof in the purchase of real property and memberships in the Devil's Lake rod and gun club; that it was agreed by and between the plaintiffs and the defendant that "if any of the makers of said notes defaulted in their payments, plaintiffs herein should have the privilege of taking over said tracts of land covered by said notes and said memberships in said club, to have and to hold as their own or to resell, as they might see fit. That plaintiffs herein accepted said notes, relying upon said representation and in consideration of said agreement"; that some of the makers of the notes defaulted in their payments and thereafter the plaintiffs requested the defendant to transfer to the plaintiffs the lots and memberships for which the notes were executed; that the defendant "refused to transfer to the plaintiffs said memberships"; that the defendant had not tendered or transferred to the plaintiffs the lots or memberships "covered by said defaulted notes"; and that by reason thereof the notes on which payments had not been made are worthless.

As a further affirmative reply to the defendant's first affirmative defense, the plaintiffs allege that the defendant had rendered the notes uncollectible by its failure to complete or finish the club house; and that by reason thereof "there has been a failure of consideration between the defendant and the makers of said notes."

To the defendant's second affirmative answer, which is in the nature of a counterclaim, the plaintiffs make two affirmative replies, the first of which is that the work was "to be done to the reasonable satisfaction of one Robin Reed" and that Reed had accepted the work as satisfactory. The second affirmative reply to this answer is that the defendant is estopped from alleging or claiming that the plaintiffs had not performed the work, by reason of certain acts of the defendant.

The jury returned a verdict for $1,000 in favor of the plaintiffs and against the defendant on the first cause of action, and on the second cause of action the sum of $250; and from the judgment entered on the verdict the defendant has appealed. No assignments of error are set forth questioning the judgment in so far as concerns the award of $250 on the second cause of action.

The first question before us is whether the plaintiffs have been paid for the work alleged in the first cause of action to have been performed by them. Prior to beginning the work, the plaintiffs submitted to the defendant a written proposal setting forth the terms and conditions on which they agreed to perform the work hereinabove described. It was stated in the writing that "this proposal when accepted shall con-

stitute a binding contract between the parties hereto''. The defendant accepted the proposal on March 22, 1939, and it is this contract so entered into that we are here called upon to construe. The agreement between the parties provides in part as follows:

"The aforementioned work is to be done for the consideration of the sum of $4200.64, represented by promissory notes, the balances of which aggregate the above mentioned amount and which said notes shall be, on acceptance of this proposal, indorsed without recourse by Marion Finance Company, or other payee therein named, and delivered to the undersigned. If the undersigned shall abandon said work, or shall fail to properly complete the same, then notes to the amount of the value of the undone work at such time shall be returned by the undersigned to Marion Finance Company."

Upon its acceptance of the proposal so submitted by the plaintiffs, the defendant delivered to the plaintiffs promissory notes with unpaid balances aggregating $4,200.64, all indorsed without recourse by the payees therein named. The notes were selected by the plaintiffs out of a number tendered by the defendant, and were accepted by the plaintiffs as in compliance with the contract.

The defendant contended in the trial court, and in this court insists, that the notes involved were accepted by the plaintiffs in full payment for the work undertaken and performed by them as set forth in the first cause of action.

It is difficult to determine, from reading the record, on what theory the trial judge submitted the case to the jury. The defense was based on the written contract between the parties. The plaintiffs admitted this contract and claimed that they had fully performed

all the provisions thereof required of them. They introduced in evidence a copy of the agreement, and in their first cause of action they did not contend that they performed any work supplemental or in addition to that stipulated by the contract.

The trial court submitted to the jury the question of the reasonable value of the services performed by the plaintiffs, but refused to submit to it the issues raised by defendant's counterclaim to the plaintiffs' first cause of action, on the theory that the only remedy available to the defendant in the event of the plaintiffs' failure to perform the contract was the return of the promissory notes "to the amount of the value of the undone work".

During the trial of the case, on cross-examination Mr. Brown, one of the plaintiffs, thus testified:

"Q. Now, before this written contract was entered into you had certain negotiations with Mr. Reed, is that right?

"A. Yes.

"Q. And it is true, is it not, that you agreed to do this work for a less amount of cash than forty-two hundred dollars?

"A. Yes."

At that point the following discussion was had between the court and counsel for the plaintiffs:

"The Court: Any objection to that?

"Mr. Winslow: No.

"The Court: Why not?

"Mr. Winslow: I want to give counsel lots of rope.

"The Court: We are not going to open this thing up.

"Mr. Winslow: All right. We will object as incompetent, irrelevant and immaterial.

"The Court: Let the objection be sustained. No use going around Robin Hood's barn in trying a law suit. The negotiations are carried into the contract and that is the finish of it, unless there is some question of fraud or something of that sort. We are not going back of those negotiations."

If the defendant was not entitled to recover a money judgment against the plaintiffs on its counterclaim but was bound by the terms of the contract and limited to a return of the promissory notes "to the amount of the value of the undone work", then the plaintiffs likewise were bound by the terms of the contract and were not entitled to a money judgment against the defendant.

■ In the construction of contracts certain rules provided by statute are to be observed. When the terms of an agreement have been reduced to writing, all the terms are considered as expressed in the writing and no evidence thereof other than the contents of the writing is admissible, except when (1) a mistake or imperfection in the writing is put in issue by the pleadings, or (2) the validity of the agreement is the fact in dispute. Evidence, however, is admissible to "explain an ambiguity, intrinsic or extrinsic, or to establish illegality or fraud": § 2-214, O. C. L. A. The intention of the parties to the agreement is "to be pursued, if possible": § 2-217, O. C. L. A. And the circumstances under which the contract was made, "including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret": § 2-218, O. C. L. A.

In the instant case there is not put in issue by the pleadings any mistake or imperfection in the writing;

nor is there any attempt to establish illegality or fraud in the execution of the contract. The only question, therefore, is whether there is any ambiguity in the wording of the instrument.

Reverting now to the above quoted provisions of the contract between the parties, we note that the unpaid balance of the promissory notes to be given by the defendant to the plaintiffs was to total the exact amount of the consideration expressed in the contract, a matter of special significance; that the notes were to be indorsed without recourse by the defendant or other payee therein named; and that they were to be delivered by the defendant to the plaintiffs upon the defendant's acceptance of the plaintiffs' proposal. We further observe that if the contractors, the plaintiffs, should abandon the work or fail to complete it properly, then "notes to the amount of the value of the undone work" were to be returned to the defendant. The parties to the contract thereby specifically provided the defendant's means of redress in the event of the plaintiffs' abandonment of the work or failure in performance.

There is nothing in the written agreement that would indicate that the notes were to be given to the plaintiffs as security for payment for the work to be done by them. In fact, the wording of the contract would seem to negative that idea, for the reason that all the notes, even those payable to the defendant, were to be indorsed without recourse. The agreement as written contains no statement that the plaintiffs should collect the interest and installments of principal, if any, as they became due and apply the same on the contract price or otherwise account to the defendant for the moneys so collected, or that they should

return the unpaid notes upon the defendant's paying to the plaintiffs in cash whatever might remain as the balance of the contract price. Nor is there any provision in the contract as to when the defendant should pay the plaintiffs for the work done, if the delivery of the notes is not to be considered as payment.

If it had been the intention of the parties that the delivery of the notes was not in payment for the work to be performed by the plaintiffs, it is inconceivable that the provision concerning abandonment of the work or failure of the plaintiffs to complete it would have been inserted.

The consideration for the work to be performed by the plaintiffs was expressed as "the sum of $4,200.64 represented by promissory notes". In passing upon a contract containing a similar provision, the court in *Edison Securities Company v. Ventura Guarantee Building & Loan Association*, 10 Cal. Ap. (2d) 555, 52 P. (2d) 608, observed:

"The said agreement clearly shows that the said certificates were received by appellant in payment of $20,000 of the purchase price of said land. The language used in said agreement can bear no other or different construction. It states that the sum of $20,000 shall be represented by the transfer and delivery to the seller, through said escrow, of $20,000 worth of the six per cent duly issued investment certificates of respondent, at par. The word 'represent', according to 'Words and Phrases', judicially defined (vol. 7, p. 6017), means, to stand in the place of; and the 'Century Dictionary' defines it as meaning, to supply the place of, or perform the duties; to be a substitute for.

"Therefore, the trial court was justified in finding, as in effect it did, that the investment certificates were taken in the place of, or as a substitute for, $20,000 in cash of the purchase price of said land."

In the instant case the notes were not given by the defendant to the plaintiffs for past-due indebtedness, but were delivered contemporaneously with the execution of the contract and prior to the plaintiffs' performance of any work. The notes were not signed by the defendant as maker, but by third parties, and they were payable to "Robin Reed Co., Trustee for Devil's Lake Rod and Gun Club and Beach Casino,", a corporation, and indorsed without recourse by "Robin Reed Co.," a corporation. No question is raised as to the sufficiency of the indorsement.

■■ We are of the opinion that it was the intention of the parties to the contract that the notes which were required to be and were delivered by the defendant to the plaintiffs contemporaneously with the execution of the contract and by them accepted were so to be delivered and accepted as payment for the work specified in the contract to be performed by the plaintiffs. The allegations in the plaintiffs' replies, that the notes were not accepted as payment and that the defendant had agreed, at the time the contract was executed, to transfer to the plaintiffs, in the event of default by makers of the notes, the lots and club memberships for which the notes originally were executed, constitute an attempt to vary the terms of the written agreement between the parties. The trial court erred in admitting, over the objection of the defendant, evidence in support of those allegations.

The record wholly lacks proof that the defendant rendered the notes or any of them uncollectible, by its failure to complete the club house. The notes, as above stated, were not payable to the defendant but to "Robin Reed Co., Trustee for Devil's Lake Rod and Gun Club and Beach Casino", a corporation. No

evidence was introduced or offered to the effect that the defendant corporation had agreed to complete or finish the club house.

■ At the close of the case the defendant moved for a directed verdict in its favor and against the plaintiffs on the plaintiffs' first cause of action, which motion the court denied. In view of the record, this ruling was erroneous.

■ In refusing to submit to the jury the defendant's counterclaim to the plaintiffs' first cause of action the circuit court did not err, inasmuch as the defendant was not entitled to a money judgment against the plaintiffs in the event that they failed to perform the terms of the contract, but was entitled only to a return of promissory notes given by it to the plaintiffs, "to the amount of the value of the undone work". Nothing herein said, however, shall preclude the defendant from seeking, in a proper proceeding, relief against the plaintiffs for failure on their part, if any, to complete the contract according to its terms.

■ The errors committed by the trial court in admitting parol evidence to vary the terms of the written contract, and in failing to direct a verdict for the defendant on the plaintiffs' first cause of action necessitate a reversal of the judgment from which the appeal was taken. The entire testimony is before this court. The jury found separately the amounts of recovery to which it considered the plaintiffs entitled on the first and second causes of action, respectively; and the judgment was rendered in favor of the plaintiffs in accordance with the verdict, $1,000 on the first cause of action and $250 on the second. It is our opinion that the matter should be finally disposed of on this appeal. By authority of § 3 of article VII of the Oregon con-

stitution, we remand the cause to the circuit court with direction to enter judgment in favor of the plaintiffs and against the defendant in the sum of $250 only, as awarded in that court on the plaintiffs' second cause of action, to which will be added costs and disbursements awarded the plaintiffs in that court.

■ The defendant shall recover from the plaintiffs four-fifths of the cost of the transcript of testimony filed on appeal to this court: *Obermeier v. Mortgage Company Holland-America*, 123 Or. 469, 482, 259 P. 1064, 260 P. 1099, 262 P. 261. Neither party shall recover in this court other costs or disbursements.